Richard W. PATTERSON, Plaintiff-Appellee,

v.

Chancellor James C. HUNT and University of Tennessee, Defendants-Appellants.

Edward E. SHAW and Joseph W. Melton, Plaintiffs-Appellants,

v.

Chancellor James C. HUNT and University of Tennessee, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 13, 1984.

Application for Permission to Appeal Denied By Supreme Court Oct. 29, 1984.

Robert M. Friedman, Memphis, for Patterson and Melton.

William W. Heaton, Memphis, for Shaw.

Beauchamp E. Brogan and Ronald C. Leadbetter, Knoxville, for defendants-appellants.

CRAWFORD, Judge.

This case was commenced by plaintiffs, Richard W. Patterson (hereinafter Patterson), Edward E. Shaw (hereinafter Shaw), and Joseph W. Melton (hereinafter Melton), in the Chancery Court of Shelby County by complaint against Chancellor James C. Hunt (hereinafter Hunt) and the University of Tennessee Center for the Health Sciences College of Dentistry (hereinafter UT). Patterson, Melton and Shaw alleged in the complaint that they are students at UT in academic good standing, are near completion of their first year of dental school and have paid all necessary fees; on April 27, 1983, they received notice from the President of the Student Honor Council alleging they violated the Honor Code of UT regarding a pathology exam on April 22, 1983; they were told to appear before the Honor Council at a certain time, at which time they did appear and were told they had a right to a hearing before the Honor Council or before an administrative board and they signed a document to allow the Honor Council to conduct the hearing. They were isolated prior to the hearing, did not hear any other witnesses that appeared before the Honor Council, and were not informed of their right to counsel. Subsequent to the hearing they were each expelled by the Dean of UT and forbidden to attend classes. Patterson, Melton and Shaw further allege that on May 18, 1983, they filed a timely notice of appeal from the decision, sought copies of the records of the Honor Council proceedings, and averred that a subsequent complaint would be filed to set aside the adverse ruling of the Honor Council because of inadequacies and procedural due process violations. They aver they were not accorded rights as set out in the student handbook of UT, they received no notice as required in the handbook, they were not advised of right to counsel as provided in the handbook, and they were not allowed to discuss the proposed hearing with anyone else, and, there-

fore, they could not present witnesses at the hearing. Patterson, Melton and Shaw contend that while the appeal from their dismissal is pending, they will be unable to attend classes the final two weeks of the school year as a result and they will be irreparably damaged. Consequently, they pray for a temporary restraining order, and, then, after a hearing, that they be returned to a full status at UT until they receive a full, fair and impartial hearing consistent with due process. On May 19, 1983, a temporary restraining order was issued by the trial court requiring UT to allow plaintiffs to attend classes, take exams, and be given such credit as earned. Also, the trial court restrained the defendants from denying plaintiffs their rights until a full hearing on the case.

The defendants, Hunt and UT, filed a motion to dissolve the restraining order and to deny the injunctive relief sought, but no action was taken on this motion prior to a hearing on the merits. On June 10, 1983, plaintiffs filed another pleading entitled, "Complaint to Have Termination from the University of Tennessee, Center for the Health Sciences, College of Dentistry, Set Aside and for Petitioners/Plaintiffs be Afforded a Hearing Pursuant to the Tennessee Uniform Administrative Procedures Act, Tennessee Code Annotated, Section 4-5-108, et seq." in which they allege, in addition to the allegations of the original complaint, that the notices they received from the Honor Council were not adequate, they were not informed of the difference between a hearing before the Honor Council and a hearing before an administrative board, they were told their chances would be better before the Honor Council, and thus, they were not cognizant of the rights waived when they signed the waiver document. They also allege that the waiver document was inadequate to waive their rights to an administrative hearing. On May 18, 1983, they met with the Dean of UT who advised them that they were dismissed from school and forbidden to attend classes. Patterson, Melton and Shaw pray for a permanent injunction to prevent the defendants from dismissing plaintiffs as

students and from taking further action against them. They also pray the decision to terminate plaintiffs as students be set aside and a full, fair, impartial and constitutional hearing pursuant to the Tennessee Administrative Procedures Act, T.C.A. § 4-5-108 et seq. be granted.

Defendants filed an answer to the complaint, denied they violated any constitutional rights of the complaint and averred that plaintiffs were given proper notice and were handled in a procedurally proper manner.

After a hearing, a judgment was entered by the trial court that the administrative decision of the defendants be affirmed and judgment entered in favor of the defendants as to Shaw and Melton, and that the administrative decision of the defendant regarding Patterson be reversed and judgment entered for Patterson with the temporary injunction heretofore issued made permanent. The trial court filed written findings of fact and conclusions of law which we quote as follows:

In this case the Court has heretofore handed down an oral opinion in the case of Richard W. Patterson, but in order to complete the record, makes the following findings in the Patterson case and deals with the Shaw and Melton cases hereinafter. In the Patterson case the Court finds that the procedure may be lacking in due process requirements in the following respects:

1. There is a question as to whether an adequate explanation was made to Patterson as to the difference in the two types of hearings to which he was entitled to elect under the options provided in the University rules.

2. The President of the Honor Council, Black, wrongfully assumed what he termed as an "executive privilege" to advise a member of the student counsel [sic], whom he thought friendly with the defendants, that that member of the Council should not vote or participate in the proceeding.

3. Lack of confrontation by Patterson of his accusers.

4. The President of the Honor Council assumed that no vote should be taken in the Patterson case because of the guilty plea, when in fact there was a "not guilty" plea as to the more serious charge.

5. The three-fourths vote was not taken on the verdict of the Patterson case, and there was no explanation made that there would be no vote if the guilty plea was entered.

6. That the defendants were advised and told not to mention the proceedings to anyone.

There is practically no dispute in the facts of this case. There is no contention that Patterson actually cheated, although he did go to the professor to inquire if the answers to the questions would be posted and passed this information on to one of the accused. He acknowledged that he knew about the arrangement, but contended that he did not actually cheat. Patterson was in the upper 10% of his class and was President of his class. It is uncontroverted that he knew about the arrangement, but there is no proof at all that he actually engaged in cheating. There is no dispute that he pled "not guilty" to cheating.

While the Court does not condone what the defendants did and feels that the University should be able to operate under its rules with a minimum of interference by the courts, the Court finds that the University did not comply with its own rules and did not comply with due process insofar as Patterson was concerned. Accordingly, it is the opinion of the Court that the injunction should be left in force with respect to Patterson so as to permit him to continue his career in dental school without further penalty to him or his parents.

With respect to Melton and Shaw, there was a "guilty" plea to the charges of cheating, and there is uncontroverted proof that they participated in the plan or scheme. Further findings of fact in their cases seem unnecessary. The case of *Ellison v. State*, 549 S.W.2d 691 (Tenn.Crim.App.1976) holds, "The guilty plea waived all non-jurisdisctional [sic] and procedural defects and constitutional infirmities." Substantially the same is supported by *Garret v. State*, 534 S.W.2d 325 (Tenn.Crim.App.1975); *Crum v. State*, 530 S.W.2d 103 (Tenn.Crim.App. 1975); *Little v. State* [4 Tenn.Cr.App. 175], 469 S.W.2d 537 (Tenn.Crim.App. 1971); *Shephard v. Henderson* [1 Tenn. Cr.App. 694], 449 S.W.2d 726 (Tenn.Crim. App.1969); Shapiro and Ames, *Tennessee Criminal Procedure*, § 13-3 at p. 155; and other cases cited in Vol. 7 of *Tennessee Digest* under the heading "Criminal Law" at section 273 at pp. 250-251. For the foregoing reasons, the court holds in the cases of Melton and Shaw their guilty plea waives their right to object to lack of due process.

The Court commented from the bench that in the case of Shaw, the proceedings seemed to be moot since he did not make the required grades for re-entry in the Fall, 1983. Accordingly, an appropriate order may be entered which continues the injunction in force as to Patterson so that he may re-enter the dental college in the Fall, 1983, but the ruling of the school is upheld in the cases of Melton and Shaw.

Both plaintiffs and defendants appealed from the judgment of the trial court. Shaw and Melton have presented six issues for review by this court, which we have consolidated as follows:

1. Whether the due process rights of the plaintiffs/students were violated?

2. Whether the equal protection rights of the plaintiffs/students were violated because of the disparity of punishment between these plaintiffs and other equally situated students for the past five years.

In addition, plaintiffs have filed a motion to strike from defendants' brief that part of the appendix containing records or exhibits which were never introduced in the

trial court as being the records of proceedings at UT.

UT presents three issues for review, but the primary issue is whether Patterson was denied procedural due process. UT contends all three of the plaintiffs were treated similarly and that Patterson's dismissal should likewise be affirmed.

We agree with the trial court that the material facts are not disputed.

The record reveals the following uncontroverted material facts: The University of Tennessee College of Dentistry operates under a Honor Code, and the Honor Code and By-Laws of the Honor Council are published in the Tenn.Admin.Comp. § 1720-3-3; that Article XI of the By-Laws is as follows:

ARTICLE XI

Publication

*Section 1.* Upon his acceptance for admission to the University of Tennessee College of Dentistry, each student shall be sent a copy of the Honor Code, along with the following statement which he must sign before his registration shall be considered complete:

"I, the undersigned, signify that I have read the Honor Code and By-Laws of the Honor Council and hereby pledge my support of them. I understand what is expected of me as a student of the University of Tennessee College of Dentistry and realize that a plea of ignorance will not be acceptable by Honor Council. If I have reason to suspect that a breach of the Honor Code has been committed, I will take action in one of the following ways:

1. Issue a personal warning to the suspect with the knowledge of a member of the Honor Council.

2. Issue a personal warning to the suspect through a member of the Honor Council."

The course of any further action to be taken, i.e., report of the violation to the Honor Council for investigation and possible hearing, shall be determined by the Honor Council representatives in the class of the accused, adhering to the guidelines outlined in Article III.

*Section 2.* Before classroom work begins, the entering dental class shall have a meeting at which members of the Honor Council shall read the Honor Code and By-Laws of the Honor Council. A faculty representative shall be present to render any assistance desired. A full explanation of all provisions shall be made, and any questions answered. All students shall be required to sign acceptance of the Honor Code at this meeting or prior to beginning classroom work.

*Section 3.* Each class shall call a special meeting at least once a year for the purpose of discussing and clarifying the provisions of the Honor Code.

Pursuant to Article XI, each of the plaintiffs, Patterson, Melton and Shaw, signed the necessary statement, which is a part of their official record at UT.

On April 22, 1983, plaintiffs, along with other members of their class, took a pathology examination. Melton was unprepared for the exam and asked Shaw to make a copy of the answer key and slip it back into the classroom for Melton to use to answer the questions correctly. Shaw agreed to help him. When Shaw finished his examination, he left the classroom, copied the answers from the posted answer key, put it inside a hollow ballpoint pen, and gave it to Melton who was in the classroom. Melton thereupon used the answers to complete the exam. Patterson's involvement was somewhat different in that he was president of the class and was asked by Melton to find out if and when the answer key would be posted. Patterson learned the answer key would be posted during the exam and relayed this information to Melton. Before the exam Patterson stated he did not want to see the copy of the answer key and during the exam he declined to use the answer key. Subsequently, a letter dated April 27, 1983, was addressed to each of the plaintiffs from the President of the Honor Council which stated:

It has been drawn to the attention of the Honor Council that you may have acted in violation of the Honor Code of the University of Tennessee College of Dentistry. The specific charge is cheating (Article III of Honor Code) and the incident concerns a pathology exam dated April 22, 1983.

I hereby summons [sic] you to appear before the Honor Council on Wednesday, May 4, at 6:00 p.m. in the Dean's Conference Room, adjacent to room S–102 of the Dunn Dental Building. Please wait in the Dean's reception area.

Noteworthy is the fact that mention of this meeting to any member of the student body, faculty or administration will be viewed as an additional violation of the Honor Code.

Pursuant to the letter, the plaintiffs appeared for the meeting and were separately brought before the Honor Council. Prior to the commencement of any proceeding, plaintiffs were advised they could have a hearing before the Honor Council or before an administrative procedures board. Plaintiffs were told separately that students sat on the Honor Council and faculty members sat on the board. Each of the plaintiffs signed a waiver which stated: "I hereby waive my right for hearing before the APA board."

Both Melton and Shaw entered guilty pleas before the Honor Council to the charge of cheating. Patterson entered a not guilty plea before the Honor Council to the charge of cheating, but guilty to knowledge of cheating on the part of others. As to Patterson we quote from his testimony:

Q. (By Mr. Leadbetter) My question was this, are you denying that you made the statement I have knowledge of cheating?

A. To be quite honest with you, without some type of recording of everything I said during that hearing, I couldn't tell you what my exact wordage was. I'd be lying if I said I was sure.

Q. Did you later on—But you did plead guilty, you did say for whatever words you used—

A. I don't know if you'd say I pleaded guilty. I said I was guilty of having knowledge that someone intended to cheat, but I was not guilty of cheating on the exam.

Q. Did you go on and in the same statement say, and not reporting it, I was guilty of not—

A. Yes, sir, that's correct.

Q. And then later on I believe you were asked to explain exactly what you did on this particular test date, and I believe at one point in time you were asked, you understand that what you did violated the Honor Code, and you responded yes, didn't you?

A. Yes, sir.

Subsequent to the Honor Council hearing each of the plaintiffs were interviewed separately by Dean Slagle, the Dean of the College of Dentistry, and they each basically reaffirmed their plea and statement made before the Honor Council. By letter of May 16, 1983, Dean Slagle notified each of the plaintiffs of his decision as follows:

Mr. D. William Black, President of the Honor Council, University of Tennessee College of Dentistry, has advised me that at a hearing on May 4, 1983, you entered a plea of guilty to a charge of violation of Article III Honor Code of the University of Tennessee College of Dentistry. The incident involved a pathology examination on the date of April 22, 1983. In light of the seriousness of the offense in which you have entered a plea of guilty, it is my decision that you are hereby terminated as a student in the University of Tennessee College of Dentistry effective this date. I regret that you have placed me in the position of having to make this decision.

Should you choose to reapply for admission as a first year student to the College of Dentistry for the entering dental class of September 1984, an ad hoc committee composed of faculty members will be appointed to review your request. A letter requesting review for possible readmission to the college must be received by my office no later than January 1, 1984.

On May 18, 1983, each of the plaintiffs filed a notice of appeal from this decision which was acknowledged by the Chancellor of the University of Tennessee Center for the Health Sciences, James C. Hunt, by letter of May 19th, as follows:

This is to acknowledge receipt of your notice of appeal dated May 18, 1983. Your complete file will be obtained from the College of Dentistry for my review. By a copy of this letter to the Dean of the College of Dentistry, I will request that a copy of the permanent record of the proceedings held of May 4, 1983, be sent to you.

I will consider any written arguments or explanations which you desire to make to me, provided they are presented to me within ten days of your receipt of this letter.

As soon as I have completed my review of your file, together with any arguments presented by you, I will advise you of my decision.

None of the plaintiffs presented any further arguments or explanation or made any further contact with Chancellor Hunt, and by letter of June 13, 1983, the Chancellor advised each of the plaintiffs:

On May 19, 1983, by certified mail, I acknowledged your appeal of May 18, 1983. At that time, I noted that "I will consider any written arguments or explanations which you desire to make to me, provided they are presented to me within ten days of your receipt of this letter". I have received no response from my May 19, 1983, communication.

Having received no response from you with additional written arguments or explanations, I have reviewed the entire file concerning your problem which resulted in your termination as a student in the UTCHS College of Dentistry on May 16, 1983, by Dean William F. Slagle.

Your file indicates that at a hearing before the Honor Council of the College of Dentistry on May 4, 1983, you entered a plea of guilty to a charge of violation of Article III or the Honor Code of the University of Tennessee College of Dentistry. This is a most serious offense and the action taken by the Honor Council and by Dean Slagle resulting in your termination at this University is entirely appropriate. Your appeal is denied.

I note that in his letter of May 16, 1983, Dean Slagle outlines steps which you might take should you desire to apply for readmission as a first year student at the College of Dentistry. I am also in concurrence with this action and hereby inform you that you will have the privilege of applying for readmission under the conditions outlined by Dean Slagle.

We will now consider the issues:

*Issue No. 1.* Whether the due process rights of the plaintiffs/students were violated?

 Each of the plaintiffs assert that they were denied due process because the notice of the charge against them was not sufficient, they had no informed explanation concerning the two types of hearings available, the President of the Honor Council advised a member of the Honor Council friendly to plaintiffs not to participate, the plaintiffs were not allowed to confront their accusers, no vote was taken by the Honor Council, and the plaintiffs were advised that the proceedings should remain secret. Insofar as Shaw and Melton are concerned, clearly, Shaw gave aid and Melton received aid. Article III states in part:

The Honor Council is entrusted with the responsibility of taking cognizance of dishonest practices which have a direct bearing upon the student in his relationship to the faculty, to his fellow students, and to the College of Dentistry. These offenses are lying, cheating, and stealing. It shall be an infraction of the Honor Code for a student to give or receive aid on any quiz, any examination. . . .

Undoubtedly, Shaw and Melton were specifically advised of the charge against them in the initial notice from the President of the Honor Council. The testimony of Shaw and Melton in the court below is abundantly clear that they were not confused in any manner concerning charges against them

and entered a plea of guilty to those charges. Patterson, on the other hand, takes the position that because the notice to him from the President of the Honor Council stated, "The specific charge is cheating (Article III of Honor Code)," he did not have notice of a charge against him, because he did not cheat as such, but merely knew that cheating was going on and did not report it. We find this difficult to absorb in view of the record in the case which clearly shows that Patterson knew that cheating was taking place and he was in fact asked to aid and abet the cheaters. Not only did he assist by contacting the professor to ascertain if the key would be posted, but he also failed to take steps to control this unfortunate incident. Article III of the Honor Code goes further and states, "It is encumbent upon each student who observes an infraction of the Honor Code to take action at once on said infraction in the ways set forth in Article XI hereof, and failure to do so shall in itself constitute an infraction of the Honor Code." Under Article XI, as heretofore indicated, one with knowledge of cheating must take action in one of the following ways: (1) issue a personal warning to the suspect with the knowledge of a member of the Honor Council, or (2) issue a personal warning to the suspect through a member of the Honor Council. As for Patterson, he declined to plead guilty to cheating, according to his interpretation, but did concede that he was guilty of the offense of failing to report cheating. This admitted failure is clearly an Honor Code violation.

Without prolonging this opinion and considering all of the assertions of the plaintiffs, we find the situation remarkable in that none of the plaintiffs have recanted in any manner the extent and nature of their participation in the incident surrounding the pathology examination which resulted in their dismissal from UT. What the plaintiffs have failed to realize is that their dismissal from school was not final until the decision was made by Chancellor Hunt, and therefore Hunt's dismissal was the final agency decision from which the plaintiffs should have perfected their appeal.

Although this case reached the courts in a rather unusual manner for proceedings of this type, we have considered the case on the merits. Regardless of any lack of notice of the charges or any lack of knowledge of the various hearings available, all plaintiffs subsequently conceded to Dean Slagle that they had violated Article III of the Honor Code. The matter was then carefully considered by the Chancellor and each of the plaintiffs was granted the opportunity to make further argument or explanation to the Chancellor; however, none of the plaintiffs took advantage of the opportunity.

Counsel for the plaintiffs have repeatedly asserted throughout this voluminous record that the due process rights of the plaintiffs were violated, because they unknowingly waived their rights to an administrative board hearing. Concerning this issue, we note two points: firstly, as provided by Tenn.Admin.Comp. § 1720-1-5, the ultimate decision from an administrative board hearing rests with the Chancellor of UT, because he represents the last resort on appeal. Similarly, the Chancellor also possessed the power to make the final decision on the appeal from the Honor Council. By either method of appeal, the Chancellor possessed the power for *de novo* review. *See Sullivan v. Houston Independent School District,* 475 F.2d 1071 (5th Cir.1973). Secondly, we note procedure provided by Tenn.Admin.Comp. § 1720-1-5.01(8)(e):

> The respondent is asked how he pleads to the charges; if he pleads guilty, no further hearing may be necessary; if he pleads not guilty, the hearing proceeds.

Once these students plead guilty, the hearing would conclude before the Board as the hearing concluded before the Honor Council. Again, as to guilty pleas, we can discern no real difference between the two methods of procedure.

Consequently, with these two points in mind, we ask the question, what rights did the plaintiffs waive unknowingly? Assuming the plaintiffs would continue in their truthful testimony and plead guilty before

the administrative board, we cannot conceive of any rights waived. Since the initial procedures would be very similar before the Honor Council and the administrative board and the appeals process to Chancellor Hunt would be identical, we hold no rights were waived and any procedural due process rights violated were cured.

■ As noted by the trial court in the Findings of Fact, the uncontroverted proof demonstrates that Melton and Shaw participated in the plan or scheme to cheat. We concur in this finding of fact.

The Chancellor further found that Patterson, "did go to the professor to inquire if the answers to the questions would be posted and passed this information to one of the accused. He acknowledged that he knew about the arrangement, but contended that he did not actually cheat. Patterson was in the upper 10% of his class, and was president of his class. It is uncontroverted that he knew about the arrangement, but there is no proof at all that he actually engaged in cheating. There is no dispute that he pled 'not guilty' to cheating."

■ We concur in the finding of fact of the Chancellor that Patterson participated to the extent that he asked a professor whether the answers would be posted, and he passed this information along to one of the other plaintiffs. We concur in the finding of the trial court that Patterson knew of the arrangement that involved the scheme or plan or the others to cheat. The trial court apparently felt that Patterson's actions were excusable, and in this regard, we disagree. The Honor Code is clear, and Patterson's actions are a violation of Article III.

The trial court found Patterson's due process rights were violated, but also found the due process rights of Shaw and Melton were not violated. On the basis of the record before us, we cannot perceive any difference in the treatment accorded to the three plaintiffs, and as heretofore noted, we do not feel that due process was denied any of these plaintiffs under the circumstances of this case.

We also note the judgment of the trial court as set out above provides that the administrative decision as to Shaw and Melton is affirmed, and that the administrative decision as to Patterson is reversed. Apparently, the trial court considered this case as an appeal from the administrative decision, although the appellate procedure was not properly followed by either party to bring the matter to the Chancery Court. Also, the record of the administrative proceedings offered into evidence by UT was objected to by plaintiffs and the court refused to accept the administrative record into evidence. With the evidentiary exclusion of the administrative record coupled with the substantial testimony received, the trial court apparently conducted a trial *de novo*. Needless to say, this situation is somewhat confusing, because to properly proceed, the plaintiffs should have appealed from their administrative dismissal by the Chancellor of UT pursuant to the Administrative Procedures Act, T.C.A. § 4–5–101, et seq. Since the evidence introduced at trial established the procedures followed by UT in reaching the administrative decision, we will consider the record of the administrative proceeding as established by the trial proof and rule accordingly.

In its final analysis, this case presents simply that the plaintiffs, upon entering dental school, agreed to be bound by the Honor Code, they breached that agreement, they admitted they breached that agreement, and, now, they say they should not be punished under the Honor Code. The plaintiffs complain of the secret proceedings of the Honor Council, the inability to confront witnesses, the lack of the administrative board hearing, and in sum, the miscarriage of justice in the denial by UT to grant them a trial. We have carefully reviewed the record and find that plaintiffs have not attempted in any way to refute the clear facts of the situation, i.e., they violated the Honor Code. In *State ex rel. v. Hyman*, 180 Tenn. 99, 171 S.W.2d 822 (1942), *cert. denied*, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943), the court said:

We are not unmindful of the fact that the governing authority in both public and private schools should have and does have the widest discretion in the matter of discipline, to the end that the honor and integrity of the school, as well as its scholastic standards, be preserved and maintained. The authority should, however, recognize its responsibility to students whose honor and future destiny is within its keeping. We cannot agree with the contention of counsel for the relators that a fair hearing contemplates a trial as in a Chancery Court or court of law. *State v. Clapp*, 81 Mont. 200, 263 P. 433, 436. We concur in the rule laid down by the Court in *Koblitz v. Western Reserve University*, 21 Ohio Cir.Ct.R. 144, as follows:

"Custom, again, has established a rule. That rule is so uniform that it has become a rule of law; and, if the plaintiff had a contract with the university, he agreed to abide by that rule of law, and that rule of law is this: That in determining whether a student has been guilty of improper conduct that will tend to demoralize the school, it is not necessary that the professors should go through the formality of a trial. They should give the student whose conduct is being investigated, every fair opportunity of showing his innocence. They should be careful in receiving evidence against him; they should weigh it; determine whether it comes from a source freighted with prejudice; determine the likelihood, by all surrounding circumstances, as to who is right, and then act upon it as jurors, with calmness, consideration and fair minds. When they have done this and reached a conclusion, they have done all that the law requires of them to do."

*Id.* 171 S.W.2d at 826.

In the case before us, each plaintiff was accorded a hearing before Dean Slagle, whose actions were reviewed by Chancellor Hunt. In addition to reviewing Dean Slagle's action, Chancellor Hunt accorded the plaintiffs the opportunity to present any further defense in their behalf. The plaintiffs did not take advantage of this offer.

Accordingly, from the record as a whole, we cannot find that these plaintiffs' due process rights were violated, and consequently we find plaintiffs' assertions in this regard without merit.

■ Concerning the second issue, plaintiffs assert that they were denied their Fourteenth Amendment Equal Protection rights, because of the disparity in the punishment meted out to them as opposed to that punishment meted out to other students who had committed Article III Honor Code violations. This assertion is made actually on behalf of Shaw and Melton only, but since we have heretofore found that these three students stand in the same position, we consider this assertion on behalf of all of the plaintiffs.

After reviewing the record in this case, we conclude that these plaintiffs did not demonstrate they were deprived of their equal protection rights, because each case involving Article III Honor Code violations must be evaluated in the light of that particular student's actual conduct. In any event, however, we do not find anything under the circumstances of this case to warrant a finding of a denial of equal protection rights. As pointed out by the U.S. Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962):

Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

*Id.* at 456, 82 S.Ct. 507.

Accordingly, we do not find any violation of the equal protection rights of these plaintiffs, and the assertions of plaintiffs in this regard are without merit.

■ Plaintiffs have also filed a motion to strike from the brief of the defendant cop-

ies of the administrative record. As we have heretofore noted, UT attempted to get the administrative record into evidence, but upon objection of plaintiffs, the court would not admit it. Without properly creating an issue concerning the record, UT has attached copies of same to its brief. No offer of proof was made in the trial court, and the record on appeal does not have authenticated copies of the administrative record enabling a reviewing court to determine the correctness of the trial court's decision.

Certainly, evidence not admitted at trial, should not be included in the appendix to a brief, and, accordingly, for what it is worth, we grant the motion of plaintiffs. We point out, however, we did not consider the record as contained in the appendix to UT's brief. Both sides introduced sufficient evidence concerning the administrative procedures utilized for our review.

Regretably, these young men have placed themselves in the position which they now occupy. Hopefully, they will be able to avail themselves of the opportunity presented by Dean Slagle to apply for readmission to the school. Professional schools should be commended for installing and adhering to the Honor Code. However, if clear violations of honesty under whatever circumstances, are excused, the Honor Code would be transformed into a mockery. This situation should not be allowed in our society.

Accordingly, on the record before us, we affirm the judgment of the trial court upholding the dismissal from the dental school of plaintiffs, Shaw and Melton, and we reverse the decision of the trial court as to plaintiff, Patterson, and affirm his dismissal from school. The injunction heretofore issued on behalf of Patterson is dissolved, and this case is remanded to the trial court for any further proceedings necessary. The costs are assessed equally to plaintiffs.

TOMLIN and HIGHERS, JJ., concur.