# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**August 12, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

LANE DENSON, a minor, b/n/f JOHN )
DENSON, father, and DEBORAH )
DENSON, mother; and JOHN DENSON )
and wife, DEBORAH DENSON, )
individually, )
    )
       Plaintiffs/Appellants, )
    )
VS. )    Appeal No.
    )    01-A-01-9810-CV-00571
DR. RICHARD C. BENJAMIN, Director )
of Schools for the Metropolitan )    Davidson Circuit
Nashville Public Schools; FLORENCE )    No. 96C-4421
KIDD, A Director of Middle Schools )
Responsible for Walter Stokes Middle )
School; EVALINA CHEADLE, Principal )
of Walter Stokes Middle School; )
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON )
COUNTY, TENNESSEE FOR THE )
METROPOLITAN NASHVILLE PUBLIC )
SCHOOLS; and METROPOLITAN )
BOARD OF PUBLIC EDUCATION, )
    )
       Defendants/Appellee. )

## APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE WALTER C. KURTZ, JUDGE

ALAN MARK TURK
P. O. Box 3742
Brentwood, Tennessee 37024-3742
    Attorney for Plaintiffs/Appellants

JAMES L. MURPHY, III
DIRECTOR OF LAW OF THE
   METROPOLITAN GOVERNMENT OF
   NASHVILLE AND DAVIDSON COUNTY

MARTHA ZENDLOVITZ
METROPOLITAN ATTORNEY
204 Metropolitan Courthouse
Nashville, Tennessee 37201
    Attorney for Defendants/Appellee

### AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

A ten year old boy was seriously injured at a Nashville middle school when another student tripped him on a stairway during a change of classes. The injured boy's parents sued the Metropolitan Government of Nashville, the Superintendent of Schools, and other school officials for negligent supervision and negligent protection. The trial court granted summary judgment to the defendants. We affirm the trial court.

## I. Facts and Trial Court Proceedings

Lane Denson and Christopher Herbert were fifth-grade students at Walter Stokes Middle School in Nashville. On the morning of December 7, 1995, Lane teased Chris in the cafeteria of the school, by calling him "Chris Sherbert." After they left the cafeteria to go to their homerooms, and were ascending a stairway to the second floor, Chris deliberately grabbed hold of Lane's ankle from behind, intending to make him trip. Lane fell backwards down the stairs.

John and Deborah Denson, Lane's parents, were already at the school for a scheduled parent/teacher conference. They reached their child within minutes of the incident. They found him face-down and unconscious in a pool of blood at the foot of the stairs. The Densons scooped Lane up, carried him to their car, and brought him to the emergency room, where he was diagnosed with a concussion, a broken nose and other injuries. The youngster subsequently underwent surgery to repair his nose and improve his breathing. Further surgery may also be needed.

On December 9, 1996, the Densons filed suit under the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, et seq., naming Metro Government, the Board of Education, the Superintendent of Schools, the Principal of Stokes, and the Director of Middle Schools as defendants. The parents claimed that Chris Herbert had a history of assaultive behavior towards other students, which the authorities at Stokes should have been aware of, and that those authorities were guilty of negligent supervision of Chris Herbert, and negligent protection of Lane Denson.

The Densons' complaint also included a claim for negligent misrepresentation and for failure to disclose material facts, directed against defendant Metro only. They alleged that they were induced to enroll their son at Stokes on the basis of representations as to safety and discipline found in a packet of materials sent to them by the school, and that these representations were belied by the failure of school officials to take appropriate steps to prevent this incident.

On March 13, 1997, the trial court dismissed the individual defendants pursuant to Tenn. Code Ann. § 29-20-310(b), and dismissed all claims against Metro except for negligent supervision and protection. The plaintiffs subsequently filed a motion to amend their complaint, to add an additional claim for negligent investigation of the incident, and for violation of their constitutional due process rights. The trial court denied the motion to amend.

The plaintiffs attempted to discover the educational records of Chris Herbert to determine if the child had a proclivity towards violence that defendant Metro knew or should have known about. Defendant Metro attempted to limit discovery in accordance with Tenn. Code Ann. § 10-7-504(a)(4), which declares that "[t]he records of students in public educational institutions shall be treated as confidential," by moving the Court to order that any production of Chris Herbert's records be under seal.

The Court granted the motion, and ordered that Chris Herbert's cumulative educational record be filed under seal for an in-camera review. The Court also granted Metro's subsequent motion for a protective order, which sought to prohibit the plaintiffs from seeking discovery of any events subsequent to December 7, 1995 in regard to the school's investigation of the incident or its disciplining of Chris Herbert.

Following its review of the parties' arguments and of the sealed records, the trial court granted the defendant's motion for summary judgment on the remaining

claims, finding liability could not be imposed upon the school system, because the injury to Lane Denson was not foreseeable.  This appeal followed.

## II.  Negligent Investigation

The Densons have raised two issues on appeal.  They argue that the trial court erred in dismissing their motion to amend their complaint to add a claim for negligent investigation, and in granting the defendant's motion for summary judgment on their claim for negligent supervision/protection.  We will deal with the issue of negligent investigation first.

After Lane Denson was injured, Mrs. Evalina Cheadle, the principal at Stokes, called Chris Herbert to her office, and had him write up his account of what had happened.  In his account, he admitted that he grabbed Lane's leg because Lane called him Chris Sherbert.  Mrs. Cheadle then prepared a Standard Student Accident Report Form, with the statement of Chris Herbert and that of a student witness attached.

Lane Denson's parents argue that Mrs. Cheadle's report was incomplete because she failed to interview other witnesses, and that other school officials failed to follow it up with a thorough investigation of the circumstances surrounding their son's injuries, particularly the prior conduct of Chris Herbert as revealed by his school records.  They contend that Lane Denson's due process rights were violated by the defendant's failure to conduct an adequate investigation, as well as by the failure to report the assault and battery on their son to the Metropolitan Police Department.  They also claimed that they had to expend considerable effort and money to conduct their own investigation.

With all due respect to the appellants, we believe the argument that their due process rights were violated by the  alleged inadequacies of the defendant's investigation is misplaced.  Such rights do not arise in favor of an injured party in the

context of school disciplinary proceedings against the party causing the injury.[1]  We do not minimize the grievous injuries Lane Denson suffered as a result of the actions of Chris Herbert, but the subsequent investigation and the resulting proceedings against Chris Herbert did not threaten the life, liberty or property of the Densons.  An indication of the appellants' confusion about this issue was their failure to cite any constitutional provisions in their proposed amended complaint.

In their brief, the appellants do cite the Fourteenth Amendment, and they quote with approval language from the case of *Goss v. Lopez*, 419 U.S. 565 (1975), which asserts the importance of due process in school disciplinary proceedings.  But *Goss* involved the due process rights of students who had been suspended for misbehavior, and who, as the Supreme Court determined in that case, were entitled to notice and a hearing before the suspension could be ordered.  The situation of the students in *Goss* is not in any way analogous to that of Lane Denson.  Further, we do not believe the appellants have suffered any damages as a result of the investigation conducted by the defendant.  We note that the cost of conducting an investigation is a normal part of any lawsuit, but is not a valid element of damages.

A party may amend a complaint or other pleading once as a matter of course, at any time before a responsive pleading is served.  Otherwise, an amendment requires written consent by the adverse party or leave of the court.  Rule 15.01, Tenn. R. Civ. P.  The grant or denial of a motion to amend is within the sound discretion of the trial court.  *Merriman v. Smith,* 599 S.W.2d 548, 559 (Tenn. App.1970).  Among the factors for the court to consider in determining whether or not to allow a complaint to be amended is the futility of the proposed amendment.  *Hall v. Shelby County Retirement Board*, 922 S.W.2d 543, 546 (Tenn. App. 1995).  In light of the lack of merit of the additional claims in the proposed amended complaint, we believe that the trial court did not abuse its discretion in denying the appellants' motion to amend.  We also believe that the trial court did not err in limiting discovery to events

---

[1]In their brief, appellants refer to the "Victims' Bill of Rights," a proposed amendment to the Tennessee Constitution that was ratified by the people in the General Election of November 3, 1998. However, this amendment appears to refer only to the criminal justice system, and in any event, the trial court filed its final order in this case on October 9, 1998.

- 5 -

occurring on or before December 7, 1995, since any events after that date are irrelevant to the appellants' surviving claim.

### III. Negligent Supervision/Protection
### A. Standards for Summary Judgment

In light of the severe injuries suffered by Lane Denson within an environment that all parents hope will be safe for their children, it is not surprising that the appellants believe that the school failed to perform one of its most fundamental duties -- that of protecting the students in its charge. Unfortunately, an examination of cases from this state and others shows that danger cannot be completely excluded from the schoolhouse or the classroom. *Kindred v. Board of Education of Memphis City Schools*, 946 S.W.2d 47 (Tenn. App 1996); *Roberts v. Robertson County Board of Education*, 692 S.W.2d 863 (Tenn. App. 1985); *Benton v. School Board*, 386 So.2d 831 (Fla. 4th DCA 1980); *Shante D. by Ada D. v. City of New York Bd. Of Educ.*, 598 N.Y.S.2d 474 (A.D. 1 Dept. 1993). In recognition of this unfortunate fact, our courts have stated more than once that schools are not expected to be insurers of the safety of children while they are at school. 692 S.W.2d at 870. Also see *King by King v. Kartanson*, 720 S.W.2d 66, 68 (Tenn. App. 1986).

Nonetheless, schools, teachers and administrators have a duty to exercise ordinary care for the safety of students, a degree of care which has been defined as "the care an ordinary prudent person would take under the circumstances." *Hawkins County v. Davis*, 591 S.W.2d 658, 660 (Tenn. 1965); *Snider v. Snider*, 855 S.W.2d 588, 590 (Tenn. App. 1993). If school officials fail to exercise such ordinary care, a school system may become liable for injuries foreseeably resulting from such a failure. *Roberts v. Robertson County*, supra.

The burden of proving negligence and foreseeability ultimately rests upon the plaintiff, but in ruling upon a motion for summary judgment, the trial court is obligated to view the pleadings and the evidence before it in the light most favorable to the opponent of the motion. *Wyatt v. Winnebago Industries*, 566 S.W.2d 276

(Tenn. App. 1977).  Summary judgment is appropriate only when there are no genuine issues as to any material facts, and when the moving party is entitled to judgment as a matter of law.  Rule 56.04, Tenn. R. Civ. P.; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  However, a disputed fact is "material" only if it must be decided in order to resolve the claim at which the motion is directed.  847 S.W.2d at 215.

In the present case, the appellants' attorney has conducted an exhaustive investigation in order to uncover evidence that Chris Herbert had a tendency towards violent behavior such as should have put the school on notice that he was a danger to his fellow students in general, or to Lane Denson in particular.  We note that apart from Chris Herbert's cumulative educational record, which was filed under seal, the transcript of the record contains 1125 pages of pleadings, motions, memoranda, orders, affidavits and notices, as well as the depositions of twelve individuals.  The sheer size of the record makes it inevitable that there will be disputes about some facts.  However, such disputes are not necessarily sufficient to preclude summary judgment for the defendant.

**B.  The Events of December 7, 1995**

The facts immediately surrounding the incident of December 7, 1995 are for the most part undisputed.  Though Chris Herbert and Lane Denson were not exactly friends, there was no evidence of animosity between them.  On the day of the incident, it appears that they sat near each other in the cafeteria when Lane teased Chris.  At deposition, Chris Herbert testified that he did not intend to make Lane fall down the stairs or to injure him, but that he intended him to trip and fall forward.  The appellants do not dispute his testimony.

It was customary at Stokes for homeroom teachers to stand outside their doorways before the beginning of classes to monitor student behavior in the hallway.

Other teachers were generally posted elsewhere in the hallway for the same reason. These procedures were followed on the day in question. There was some deposition testimony that the linoleum tiles on the stairway where Lane fell were in poor shape, but there are no indications in the record that this made the stairs inherently dangerous, or that the condition of the stairs contributed to Lane's injury.

Appellants argue that the defendant's agents were negligent in not posting an "educational professional" on the stairwell during the change of classes. While this might conceivably have prevented Lane's injury, it is self-evident that teachers cannot be everywhere at once. Moving a teacher from one location in the hallway to another would still leave a gap where students would have the opportunity, however briefly, for making mischief. See *Chudasama v. Metro Government of Nashville*, 914 S.W.2d 922 (Tenn. App. 1995). Thus it appears to us that the school cannot be found negligent for not posting a teacher on the stairway where Lane Denson was injured.

## C. Chris Herbert's History

Chris Herbert was a student at Percy Priest Elementary School from the first to the fourth grade. When he was in the third grade, he brought a pocketknife to school. He showed it to some other children, but didn't wave it around or threaten anybody with it. In accordance with the policies of the school, he was suspended for one day. The record shows that he was suspended from riding the bus four times while he was at Percy Priest, usually for standing up while the bus was moving, but on one occasion the suspension was for fighting. He also had a fight with another boy at the bus stop while he was at Percy Priest.

In 1995, Chris Herbert began attending fifth grade at Stokes. Sometime in the early part of the year, he was suspended from riding the bus for fighting. On September 13, 1995, his stepfather committed suicide. We need not describe the

circumstances surrounding the suicide here, but they were such as would make a powerful and disturbing impression on any child, or for that matter, on any adult. He was already receiving in-school counseling for problems with anger, but after the suicide additional counseling was supplied through the Metro Police Department.

Chris Herbert's mother informed Mrs. Cheadle, the principal at Stokes, about the suicide, and Mrs. Cheadle made most of Chris's teachers aware of the unfortunate event. It is apparent that his stepfather's suicide continued to haunt the child. He appeared angry much of the time. On one occasion he shoved his desk and walked out of the classroom, slamming the door; on another, he burst out crying in class for no apparent reason. Chris Herbert was bigger than most of the other children, and the appellants have submitted affidavits of a number of students stating that he had a bad temper, that they were afraid of him, or that they avoided him. But there is no evidence that his teachers were ever informed of these concerns.

Appellants argue that the school was negligent in failing to adequately discipline Chris Herbert. Apparently they believe that the defendant's failure to separate him from the general student body prior to December 7, 1995 was a cause in fact of Lane Denson's injuries. In support of this thesis, they refer us to Tenn. Code Ann. § 49-6-4001(a), which requires school systems to develop a code of acceptable behavior for students, and to the Code of Student Conduct, which was adopted by the Board of Education pursuant to the above statute. Rule 5 of the Code prohibits students from assaulting other students. Rule 13 (referred to in appellants' brief as a zero tolerance policy) reads as follows:

### RULE 13.  AGGRAVATED ASSAULT BY STUDENT
### (Amended August 8, 1995)

A student who commits aggravated assault will be excluded from school for one calendar year. A student who intentionally or knowingly commits an assault which causes serious bodily injury to another student/or others will be considered guilty under this rule. Upon determination that a student acted in self-defense, it will not be considered a violation of this rule.

Another section of the Code of Student Conduct lays out the procedural due process to be followed in case of rule violations. In cases calling for a short-term suspension, the principal may suspend a student from attending school for up to ten days. However, a formal hearing, proceeded by a written notice to the student and his parents, is required before a long term suspension or expulsion can be imposed.

It appears to us that appellants have confounded the defendant's failure to institute due process procedures for a one-year suspension of Chris Herbert after December 7, 1995, with an alleged failure to discipline him adequately prior to that date. As we have already indicated, the appellants have no standing to object to actions taken (or not taken) against Chris Herbert after he injured Lane Denson, so we may only examine the defendant's conduct before that incident.

It is well-established that "the governing authority in both public and private schools should have and does have the widest discretion in the matter of discipline. *Patterson v. Hunt*, 682 S.W.2d 508, 517 (Tenn. App. 1984); also see *Goss v. Lopez*, 419 U.S. 565 (1975). Even if we put this principle aside, there is no evidence that any of the infractions committed by Chris Herbert before Lane Denson was injured would have warranted a long-term suspension. Further, there are no indications that any of them were committed close enough in time to the date of injury to have even brought into question the principal's failure to use her discretionary power to impose a short-term suspension upon him.

It is often stated that hindsight is 20/20. However school administrators do not have the benefit of hindsight when they make decisions about the children in their care. Of course, the law defines negligence by the standard of foreseeability, not that of hindsight. Further, the public schools are obliged to provide an education to all the children who enroll, not only those whose conduct is above reproach. We are certain that it is often difficult to determine when the right of a disruptive or disturbed child to receive a public education is outweighed by the possibility of danger to other students from that child's presence in the classroom. School administrators are granted great discretion in disciplining students because they are the individuals in the

best position to make such difficult determinations.  It appears that in this case, they did not abuse that discretion in failing to suspend Chris Herbert before December 7, 1995.

## IV.

The judgment of the trial court is affirmed.  Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the cost on appeal to the appellants.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE