420 P.2d 35

**Leroy C. CAMIS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and Henry C. Beck Co., Respondents.**

**No. 1 CA–IC 90.**

Court of Appeals of Arizona.

Oct. 25, 1966.

James R. Cropper, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Glen D. Webster, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona.

The Commission determined that petitioner had suffered a permanent partial disability equal to a 50% loss of function of the right (major) arm, and was entitled to a scheduled award as provided by 23–1044 A.R.S. Petitioner asks this Court to declare that the Commission is required, when a disability may be classified under either of two alternative scheduled disability provisions, to make the award which is of greater monetary benefit to the petitioner.

The facts necessary for a determination of this case are not disputed. Petitioner was working as a carpenter on 30 October 1963, when a scaffolding broke and he fell to the ground catching his full weight on his out-stretched hand and arm. This resulted in a telescoping type fracture at the wrist.[1]

Petitioner was treated for the injury and attempts were made by the Commission to provide for physical and psychiatric therapy, as well as vocational rehabilitation. On 11 December 1964, the Commission issued a finding and award for scheduled permanent disability, finding that he had suffered a partial disability equal to a 50% loss of function of the right arm, which entitled him to compensation for thirty months in the amount of $349.48

---

1. Petitioner also fractured his right heel, but it appears that this injury healed without a disability. Petitioner does not raise a question with regard to it on this appeal. It is therefore not a subject of our discussion.

monthly. This computation was based on 50% of the average monthly wage of petitioner prior to the injury, for one-half of the total number of months allowed for a scheduled injury resulting in the loss of use of the arm, pursuant to 23–1044, subsec. B (13) and (21) A.R.S.

The petitioner timely protested and filed a petition for rehearing. It is petitioner's contention that he has sustained 100% loss of use or disability of the right hand, which would entitle him to 50 months of payments pursuant to 23–1044, subsec. B(12) and (21) A.R.S., rather than the thirty months of payments he was awarded. The computation urged by petitioner would result in an award of $349.48 per month for 50 months.

■ Hearing was held pursuant to petitioner's request 14 July 1965, and 21 October 1965. There being no objection to matters in the file, they may be considered by the Commission and by this Court on appeal. Salmi v. Industrial Commission, 3 Ariz.App. 411, 415 P.2d 126 (1966). The report of the medical consultation held 18 November 1964, concluded as follows:

"As a result of the injury sustained in the accident of 10/30/63 it is the opinion of the consultants that the residual permanent disability attributable to those injuries is confined to the impaired function of the right upper extremity and is equivalent to approximately 50% functional loss of the right arm."

Three members of two of the medical consultation boards were made available to petitioner for cross-examination at the hearing. James R. Moore, M.D., testified:

"Question—Now if we were to say that we were not taking the whole arm into consideration, what would you estimate Mr. Camis's disability as far as his hand is concerned? * * *

"Answer—He would have had probably approximately 55% or a little more of the hand."

Jack O. Hubbard, M.D., answered:

"Oh, I would estimate, I think, in the 50 to 60% range. I would say 60% maximum."

Leo L. Tuveson, M.D., testified:

"Well, I would say he would probably have 70 or 75% functional loss of the hand.

"Question—70 to 75% loss of the hand?

"Answer—That, of course, is only an estimate.

"Question—That is your opinion?

"Answer—That is my opinion.

"Question—So, Doctor, when the 50% rating was applied in this matter, the whole extremity was taken into consideration, is that correct?

"Answer—Yes."

The report of the Referee to the Commission states as follows:

"*BASIS FOR CONCLUSIONS AND RECOMMENDATIONS:* There was no evidence to support the allegations contained in claimant's petition. Each of the Doctors testifed that the claimant had no more than a 50% loss of function of the right arm. It was my observation listening to the testimony as a layman, ·that the claimant did not demonstrate more than a 50% loss of function of the arm.

"In answer to questions by the claimant's attorney, all the Doctors agreed that if the disability were confined in the hand alone, it would exceed a 50% functional loss. However, since the hand constitutes only a portion of the arm, it can readily be seen why the functional loss of the whole arm may be limited to 50%."

We are dealing in this matter with a scheduled disability; 23–1044 A.R.S. reads in part:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average month-

ly wage for the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

\* \* \* \* \* \*

"12. For loss of a major hand, fifty months, or of a minor hand forty months.

"13. For loss of a major arm, sixty months, or of a minor arm, fifty months.

\* \* \* \* \* \*

"20. The permanent and complete loss of the use of a finger, toe, arm, hand, foot or leg may be deemed the same as the loss of any such member by separation.

"21. For the partial loss of use of a finger, toe, arm, hand, foot, leg, or partial loss of sight or hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of such member, or complete loss of sight or hearing, which the partial use thereof bears to the total loss of use of such member or total loss of sight or hearing.

\* \* \* \* \* \*

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as existed at the time of the subsequent injury."

Before the Commission may make a final determination in this matter, it must determine the amount of permanent partial disability to the hand before they may issue an award predicated on permanent partial disability to the entire arm. There are two reasons why this must be done in the instant case.

■ First: The evidence is ample to indicate that the disability to the hand alone is in excess of 60% of the total loss of the use of the hand. As was stated by Dr. Tuveson at the hearing:

"Well, just trying to estimate the motions that he has left as far as his arm was concerned, he has the arm present, I mean there is no amputation present, and there was no absence of substance as far as the arm was concerned. We believe that the arm could be used for the more strenuous things of carrying or supporting things within the extremity, but he certainly wouldn't have any ability to use the hand. Consequently, we felt that as long as he was unable to use the hand that that would constitute at least a 50% loss of the arm."

50% of sixty months for the loss of use of the arm would be thirty months compensation. 60% of fifty months would also be thirty months compensation if based on the hand rather than the arm. If the permanent partial disability of the hand should exceed 60% then the petitioner would be entitled to a greater period of compensation for permanent partial disability of the hand than he would of the entire arm. It has been repeatedly stated that the Workmen's Compensation Laws should be given a liberal construction in keeping with the humanitarian and compassionate motives which caused their adoption. Bierman v. Industrial Commission, 2 Ariz.App. 548, 410 P.2d 666 (1966). In the instant case, the claimant being legally entitled to compensation under either of two scheduled disabilities, should be entitled to the benefit of the approach to his scheduled injury which would provide him the larger amount of compensation. Our Supreme Court has stated the Industrial Commission may not deny the injured workman:

" \* \* \* the full measure of compensation granted by that law on the facts as they exist." Williams v. Industrial Commission, 68 Ariz. 147, 153, 202 P.2d 898, 902 (1949).

■ Second: A reading of 23–1044 A.R.S. indicates that the legislature intended

to compensate for the loss of an arm based primarily upon the hand itself. Compensation for the total loss of a major hand is payable for fifty months; compensation for loss of the entire arm is payable for sixty months. Under subsection E of 23–1044 A.R.S., should a person lose the hand and later lose his arm, the amount of compensation received for the hand must first be deducted, but see Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652 (1956). It is apparent then that the legislature felt the hand to be the equivalent of ⅚ths of the arm itself. This importance placed upon the hand, as opposed to the whole arm, is not unreasonable in light of the importance of the hand to a workman, particularly one such as petitioner, engaged in carpentry. The Industrial Commission may not, on these facts, find that the partial loss of use of the entire arm to be a percentage of disability which is less than ⅚ths of the loss of use to the hand itself. For example, should the Commission find that a workman has suffered a 100% loss of use of the hand, it may not find that the claimant has suffered less than ⅚ths or 83.3% of the loss of use of the entire arm. This, of course, would not prevent the Commission from finding a larger percentage of disability where the arm is injured in addition to the hand. In the latter situation, the disability to the arm would be ⅚ths or 83.3% of the total disability to the hand, plus whatever additional disability is attributable to the rest of the arm, not to exceed 100%.

■ It is noted that the file reflects the following notation on 13 March, 1964:

"It is noted that this claimant had right arm injury on 7/22/63, Case Number AY 30190. Temporary disability award was issued 12/10/63 and the case was closed. Also, claimant has 10% disability rating service connected due to fracture of both ankles."

We have previously stated that when an award is set aside, the petitioner is entitled to a hearing or trial de novo. Avenente v. Industrial Commission, 2 Ariz.App. 336, 408 P.2d 856 (1965); Nye v. Industrial Commission, 2 Ariz.App. 279, 408 P.2d 41 (1965). If it should be determined that petitioner's service connected disability is in fact a permanent partial disability, then petitioner would be entitled to the benefits of an "unscheduled" award pursuant to paragraph C of 23–1044 A.R.S.

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.