Walter D. LANDERS,
Plaintiff/Appellant,

v.

FIREMAN'S FUND INSURANCE
COMPANY, Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

July 3, 1989.

Rehearing Denied Aug. 7, 1989.

Mark D. Slagle, Johnson City, for plaintiff/appellant.

N.R. Coleman, Jr., Milligan, Coleman, Fletcher, Gaby, Kilday & Woods, Greeneville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

This workers' compensation case was initiated in the trial court against the employers' compensation insurance carrier. The plaintiff, Walter Landers, was employed by Emerald Tree Company in Greene County, Tennessee. It is not disputed that he sustained a compensable injury growing out of and in the course of his employment on 27 April 1987. On the hearing of the case the trial judge granted some medical expenses and denied others. He also denied payment for any additional temporary total disability benefits and permanent partial benefits. The action was dismissed and plaintiff has appealed.

The trial court made certain findings which were incorporated into his final judgment. In summary these included the fact that on the day after his injury plaintiff went to the emergency room of a local hospital and was referred to Drs. Stanley and Hoppe. After examination and initial treatment they referred Mr. Landers to Dr. Walter Chapman, an orthopedic surgeon in Greeneville. After examining him and a period of treatment, Dr. Chapman re-referred Landers to the care of Drs. Stanley and Hoppe. A request was made by plaintiff, of a claims adjuster employed by Fireman's Fund Insurance Company, to be allowed to see and be treated by Dr. Calvin Johnson of Johnson City. The company representative emphatically denied permission for plaintiff to see Dr. Johnson. She gave him a choice of three others from among which plaintiff selected Dr. Jack Williams. After he saw Dr. Williams one time, Fireman's Fund terminated all fur-

ther benefits to Mr. Landers. In a conversation with Dr. Hoppe concerning Dr. Johnson, he "suggested" that plaintiff go ahead and make an appointment with Dr. Johnson. Plaintiff made the appointment notwithstanding his knowledge of the insurance company's vehement denial of permission for him to do so. Dr. Johnson undertook to treat the plaintiff and had certain diagnostic tests performed. Significant medical bills were incurred as a direct result of plaintiff's treatment by Dr. Johnson.

The trial judge considered Dr. Johnson's evaluation of eleven percent (11%) permanent disability to the body as a whole and Dr. Williams estimate that there was no permanent disability. He found that plaintiff had few, if any, objective findings to support his subjective complaint, denied any permanent impairment rating and dismissed the suit.

■ Our review of findings of fact by the trial court is de novo upon the record of that court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e).

■ This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987). In the present case, as in *Humphrey*, some of the issues involve expert medical testimony. All of the medical proof was taken by deposition or was documentary, so that all impressions of weight and credibility must be drawn from the contents thereof, and not from the appearance of witnesses on oral testimony at trial.

Our view of the evidence is somewhat different from that found in the memorandum opinion of the trial judge.

The appellant testified he was 39 years of age at the time of trial. He had a 4th grade education, could neither read nor write and suffered from a vision impairment as the result of a previous injury. His previous work history indicated he had done some carpentering, painting, farm work and things of that nature. On the date of his injury he was employed by Emerald Tree Company as a general laborer, mowing, resetting seedlings, etc. His injury came about when he stepped, with his left leg, into a hole. At the time he was carrying a bucket full of seedlings and a spade to accomplish the replanting. He immediately experienced "a little stinging and hurting then it just got worser and worser as the day went on." He went to the hospital the next day because he was not able to get up and go to work.

The subsequent history comes entirely from his testimony except for the doctors' depositions. He says an emergency room doctor referred him to Drs. Stanley and Hoppe. They in turn sent him to Dr. Chapman and during the next month he was being examined and treated by all three. During that period of time he maintained contact with a Fireman's Fund representative. Ultimately she told him the doctors were giving him too much medication and she was not going to pay any more medical bills or compensation checks. It was then he employed counsel. At the time he was referred back to Drs. Stanley and Hoppe by Dr. Chapman he was still complaining of having pain. Dr. Hoppe stated he was not a back surgeon and suggested he make an appointment to see Dr. Calvin Johnson of Watauga Orthopedic Clinic in Johnson City. Mr. Landers requested the Fireman's Fund adjuster to make an appointment for him and was advised she wanted him to go to Dr. Jack Williams, which he did. There is some confusion in his testimony on this point. On cross-examination he said the adjuster told him the Company would not permit him to be seen or treated by Dr. Johnson. He was uncertain whether or not she had given him the names of three doctors and the opportunity to choose one of the three. He was emphatic in his testimony that she said she was not going to pay

Dr. Hoppe or Dr. Stanley or Dr. Johnson. He did see Dr. Williams who examined him, gave him some medication and told him he was sending everything down to Dr. Hoppe. Dr. Hoppe did not receive any medical report from Dr. Williams.

At the time of the hearing on 6 June 1988 it was appellant's testimony that he could neither stoop nor bend and could not lift anything. He could not negotiate stairs with any great degree of facility and could not climb ladders or do the work he used to do. He could not stand on his feet too long because his back began to pain him and he would have to sit awhile. He could not sleep well at night. He was not taking medication because he did not have the money to buy any. He could engage in painting for awhile if he was standing on the ground. He could no longer paint trim work because he was inhibited by his lack of vision and could not stretch up to do trim work because it caused pain in his back. He had not recovered from his injury and his medical treatment from Dr. Johnson had ended because he did not have the money to pay for the treatment. During the time he was being treated by Dr. Johnson the Fireman's Fund representative told him they would pay the expenses to send him to a pain clinic in Nashville. He declined to go because Dr. Johnson was of the opinion he could not stand the ride down there, saw no point in taking a pain stress test and was not familiar with the clinic.

Dr. Henry Jackson Williams, a Board Certified Orthopedic Surgeon, deposed on behalf of the appellee, Fireman's Fund Insurance Company, that he saw Mr. Landers for a second opinion, perhaps at his request, and that Fireman's Fund made the appointment. He repeated the history of Mr. Landers' injury, generally in accordance with appellant's testimony. Apparently he had the benefit of Dr. Chapman's report of his treatment, indicating he had been followed by that physician as an outpatient and given various types of medication which seemed to help the pain and discomfort. In addition he had received physical therapy, consisting of heat pads, moist heat, and electrical stimulation, none of which had helped. He reviewed a myelogram performed in conjunction with Dr. Chapman's treatment which had been interpreted as a normal study. Dr. Williams' physical examination revealed no abnormalities. Mr. Landers' tenderness was confined to the pre-sacral area and he appeared to have a sixty to seventy-five percent (60–75%) normal range of motion in his back. The range of motion tests made were primarily subjective. The involuntary knee and ankle jerk tests are considered to be objective tests. On completion of his examination he surmised that Mr. Landers must have sustained a low back sprain which is a stretching or pulling of the musculoligamentous complex of the lower back. He opined that the prior treatment Landers received had been adequate and there was nothing else he could offer or suggest in terms of treatment, other than perhaps an exercise program, a lumbo-sacral corset and the resumption of some activities, plus controlling his discomfort with mild medications. He concluded that if he had been the treating physician on 13 July 1987, the date of his examination, he would have probably put Mr. Landers on a program of exercises with the thought of having him return to work within the next couple of weeks. He affirmed that a request had been made for him to see Mr. Landers again. He felt he had nothing else to offer him and did not want to actively become engaged in his treatment. He was of the opinion there was no medical basis for continuing Mr. Landers' temporary total disability status for any extended period of time beyond the date of his examination. His notes did not enable him to reconstruct exactly when he might have sent him back to work. He would have hoped within a couple of weeks unless something had changed or subsequent examinations led him to feel otherwise. Based on the whole picture, within a reasonable degree of medical certainty and his evaluation he did not expect Mr. Landers would have any permanent impairment secondary to the injury which he described.

On cross-examination he testified that the symptoms described by Mr. Landers

could suggest some sciatic nerve involvement and his condition could have possibly regressed to a point where he would need further treatment. He was asked and affirmed that the nature of the prior treatment received could be consistent with treatment of a back injury such as Mr. Landers sustained and it was a matter of judgment to be made by the treating physician.

Dr. Calvin Johnson, also a Board certified Orthopedic Surgeon, whose credentials were unimpeached, testified by deposition that he first saw Mr. Landers on 23 July 1987. He reviewed the history of his injury and prior medical treatment. On the day he first saw him, Mr. Landers complained of low back pain which was greater on the left side than on the right extending into both legs but more defined in the left. His examination revealed substantially the same findings made by Dr. Williams with the exception that he found limitation of motion was somewhat greater. He proceeded to have a CT scan performed which did not show any particular abnormality. He endeavored to obtain authority for physiotherapy treatment for Mr. Landers and permission was not forthcoming. Mr. Landers did not have the money 'for the treatment. Landers was seen progressively on August 20, October 16, November 19, and December 7. Throughout these visits his physical examinations revealed little change. He seemed to get gradually worse and on 20 December 1987 his pain became so severe they felt he should be hospitalized, observed, and given some physiotherapy so they could assess the situation more clearly and make a decision whether there was anything that might help him. He was placed in pelvic traction and given a psychological evaluation. He was last seen on 25 February 1988 at which time there was not a great deal of difference in his condition. He still had limitation of motion and was still complaining of some pain. He was released on that date as having attained maximum improvement. During that period of time Mr. Landers could not have engaged in the type of work he had been performing for Emerald Tree Company. Using the AMA Guidelines to the Evaluation of Permanent Impairment, 2nd Edition, he found that Mr. Landers had eleven percent (11%) permanent impairment to the body as a whole as a result of his back condition.

■ A thorough reading of this record makes a number of things clearly apparent:

(1) There is no evidence in the record to refut the testimony of Mr. Landers that payment for his medical treatment and his compensation payments had been cut off by the agent for Fireman's Fund Insurance Company prior to the time he was first seen by Dr. Calvin Johnson on 23 July 1987.

(2) Dr. Williams reviewed Mr. Landers' medical history and examined him for the sole purpose of rendering a second opinion on his condition. At that time he felt a program of exercises, a lumbo sacral corset, and resumption of some activities while controlling his discomfort with mild medications was in order.

(3) Mr. Landers was not referred to Dr. Williams for the purpose of treatment, and Dr. Williams stated unequivocally that he did not want to actively become engaged in his treatment.

(4) The offer by defendant to send the plaintiff from Greeneville to Nashville to a pain clinic was neither reasonable nor proper unless it could be established that comparable facilities were not available closer to the locality where the injury occurred.

(5) There is nothing in this record to indicate when Mr. Landers attained maximum recovery from his injuries unless it be 25 February 1988 when he was released by Dr. Johnson.

Certainly it is within the authority of this Court to reverse the judgment below and fix a degree of permanent partial disability. We do not consider it appropriate to do so under the state of the record we have for review. The treating physician gave Mr.

Landers eleven percent (11%) permanent partial disability. He clearly was hindered in his treatment of Mr. Landers by refusal of the defendant to provide payment for it. Dr. Williams, to whom Mr. Landers was unquestionably referred for a second opinion, testified he would not expect Mr. Landers to have any permanent impairment secondary to the injury which he described. At the same time, while declining to enter into any further course of medical treatment, he also indicated that further treatment, albeit limited, would have been appropriate. There is other medical evidence available. If that should prove unsatisfactory to the trial judge it is within his discretion to appoint a neutral physician of good standing and ability to make an examination of Mr. Landers and report the result to the Court. T.C.A. § 50-6-204(d)(5).

In his final judgment the trial judge noted the plaintiff had few, if any, objective findings to support his subjective complaints. In *Cates v. Better-Bilt Aluminum Products Company,* 607 S.W.2d 476, 478 (Tenn.1980) this Court called attention to T.C.A. § 24-718 [T.C.A. § 24-7-114], expressing the legislative intent that medical opinions based on subjective findings are no longer to be excluded from evidence.

The judgment dismissing the plaintiff's suit is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion. The evidence already on file may be considered as well as any additional medical proof which may be adduced by either party. Payment should be made for treatment by Dr. Johnson. We express no opinion as to whether or not a permanent award should or should not be made. The costs of this appeal are taxed to the appellee. Costs below will be set by the trial court.

DROWOTA, C.J., and FONES, COOPER, and HARBISON, JJ., concur.

## ORDER ON PETITION TO REHEAR

The defendant, appellee has filed a petition to rehear in which it is asserted that the Court's opinion overlooks and misapprehends material facts and propositions of law; and relies upon facts not admissible into evidence.

This Court has carefully considered the petition to rehear, as we did the evidence which petitioner opines we failed to give due weight. The Court did no more than remand the cause to give both parties the opportunity to offer additional medical proof which we found inadequate to sustain the trial court's judgment.

The petition to rehear is denied.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.