**David C. ONLEY, Plaintiff/Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant/Appellee.**

Supreme Court of Tennessee,
at Nashville.

Feb. 26, 1990.

Jerry D. Mayo, Jane M. Johns, Nashville, for plaintiff/appellant.

David J. Deming, Manier, Herod, Hollabaugh & Smith, Nashville, for defendant/appellee.

## OPINION

HARBISON, Justice.

In this workers' compensation case the only issue presented at trial and on appeal is the determination of the appropriate scheduled member involved in a compensable injury and the extent of disability thereof.

There is no dispute as to the material facts, and the issue revolves primarily around the interpretation of a deposition given by an orthopedic surgeon, the only medical witness to testify.

The injured employee, appellant here, sustained a severe comminuted fracture of the first metacarpal bone in his left hand when he was involved in an industrial accident which occurred on June 8, 1988. He also sustained a laceration of the webbed portion of the hand between the thumb and the index finger. Appropriate casts were applied to the fracture, and on September 22, 1988, the attending orthopedic surgeon was of the opinion that maximum recovery had been attained. The physician testified that appellant would retain some permanent partial disability, which he expressed in terms of sixty-three percent of the left thumb. He gave corresponding percentages if this disability were translated into impairment of the hand or of the arm. The fracture site was at the very base of the thumb and extended slightly into the joint between the base of the thumb and the wrist.

Appellant was engaged in heavy industrial work at the time of his injury, and his only work experience has been as an unskilled manual laborer. His physician testified that appellant would have some impairment in the use of his left hand, particularly in its strength when gripping or climbing, that there was a minimal shortening of the thumb, and that there was a possibility of the development of arthritis in or near the site of the fracture. The fracture was comminuted, the bone being broken into four or more portions, but the fractures were not sufficiently displaced as to require surgery. Appropriate casts were the treatment of choice by the orthopedic surgeon.

At trial appellant contended that he had sustained a substantial permanent partial disability to the left arm because the fracture site extended slightly into the joint of one of the carpals, or wrist bones. The insurance carrier for the employer insisted that disability should be limited to a percentage of the thumb or, at most, to the left hand.

After considering all of the evidence, the trial judge awarded sixty percent permanent partial disability to the left thumb, together with appropriate allowance for future medical expenses. There were no issues concerning other benefits, such as previous medical expenses or temporary total disability benefits.

The Tennessee Workers' Compensation Act, like that of many other states, contains a list of scheduled injuries with specific benefits to be paid for the loss of particular parts of the anatomy. The current schedules provide for two-thirds of the average weekly wage of the employee for a period of sixty weeks for loss of a thumb. For loss of a hand benefits are provided for one hundred fifty weeks, and for loss of an arm for two hundred weeks.

█ The orthopedic surgeon testified generally in terms of disability to the thumb, but he also at times referred to impairment or loss of use of the left hand. He made little reference to the loss of use or impairment of the left arm, and in our opinion the preponderance of the evidence supports the conclusion of the chancellor that an award for permanent partial dis-

ability to the left arm was not justified under all of the circumstances of the case.

■ The Tennessee statute does not define the various anatomical members to which it refers. Generally the words used in the schedules will be given their ordinary and commonly accepted meanings. *See Continental Insurance Companies v. Pruitt,* 541 S.W.2d 594, 595 (Tenn.1976).

■ Difficult problems are frequently presented when injuries occur to scheduled members but have adverse effects upon other parts of the anatomy. When an injury is confined to a scheduled member, ordinarily only the statutory benefits for that particular member can be awarded. *See Reagan v. Tennessee Municipal League,* 751 S.W.2d 842 (Tenn.1988).

■ In the present case, in our opinion, the injury was either confined to the left thumb or to the left hand. Neither the "thumb" nor the "hand" is defined in the statutory schedule. Diagrams attached to the deposition of the attending physician show that the fracture site was at the base of the thumb at the portion surrounded by the large or fleshy part of that member.

Grammatical definitions of various anatomical members are varied. For example in a popular standard legal dictionary the term "hand" is defined:

> In anatomical usage the hand or manus, includes the phalanges, or fingers and thumb; the metacarpus or hand proper; and the carpus, or wrist; but in popular usage the wrist is often excluded.

Black's Law Dictionary, pg. 644 (5th ed. 1979).

In a widely used legal text on medicine, it is stated that the hand is a very complex structure. The bones contained in the hand are described as follows:

> The five metacarpal bones of the hand radiate from the distal row of carpal bones at the wrist, with the proximal end, or base, of each metacarpal articulating with one or more of the carpal bones.... The metacarpals are miniature long bones with the shafts of the bones easily felt on the back of the hand.

At the distal end of each metacarpal there is an expansion of the bone termed the head.

> The metacarpals articulate with the proximal phalanges of the fingers....

> It should be pointed out that in proper nomenclature the thumb is the first finger and the index finger is the second. The index finger is sometimes incorrectly referred to as the first finger, creating confusion in the nomenclature of the other fingers.

1 Attorney's Textbook of Medicine § 3.01 (3d ed., Gray, 1989).

The courts have frequently had difficulty in determining whether an injury was properly attributable to the fingers, the hand, or the wrist. *See, e.g., Camis v. Industrial Commission,* 4 Ariz.App. 312, 420 P.2d 35 (1966) (where injury could fall under more than one schedule, benefits will be allowed under the greater; wrist-hand injury). In the case of *Guerin v. Insurance Company of North America,* 183 Neb. 30, 157 N.W.2d 779 (1968) an injured employee was held to be entitled to an award to the left hand "as a unit" rather than particular fingers where there had been loss of a substantial portion of two metacarpal bones and injury to adjacent soft tissue. In the same case, however, it was held that the award should be confined to the right thumb, rather than the right hand, because of degenerative changes at the base of the metacarpal bone at the wrist of the right hand as a result of fusion of the metacarpal phalangeal joint of the right thumb.

In the case of *Standard Glass Co. v. Wallace,* 189 Tenn. 213, 225 S.W.2d 35 (1949) the Court affirmed an award for disability to the hand, rather than to specific fingers. *See also Eaton Corporation v. Quillen,* 527 S.W.2d 74 (Tenn.1975) and cases cited therein.

The fracture site, in our opinion, was located in that portion of the anatomy which in general usage would be considered to be a part of the hand, rather than of the thumb itself. Accordingly, in our opinion, the award should have been based upon a disability to the left hand

rather than being confined to the left thumb.

Taking into account the nature and extent of the injury and the permanent impairment resulting, in our opinion the employee was entitled to an award of fifty percent permanent partial disability to the left hand rather than sixty percent of the thumb as allowed by the trial judge.

The judgment of the trial court is modified accordingly and in all other respects affirmed. Costs on appeal are taxed to appellee. The cause will be remanded to the trial court for collection of costs accrued there and for any further proceedings which may be necessary.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.