# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**

**Appellate Court Clerk**

MICHAEL SANDERSON,    )
            )
  Plaintiff/Appellant,    )  Davidson Equity No. 94-3806-III
            )
vs.           )
            )
UNIVERSITY OF TENNESSEE,  )  Appeal No. 01A01-9607-CH-00289
            )
  Defendant/Appellee.    )

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For the Plaintiff/Appellant:    For the Defendant/Appellee:

Marilyn L. Hudson      Beauchamp E. Brogan
Knoxville, Tennessee      Ronald C. Leadbetter
            Knoxville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

In this case, a student at the University of Tennessee was charged with plagiarism. After a hearing, an administrative law judge found that the student had not committed plagiarism. The University Chancellor reversed the ALJ's decision, issuing a final order finding the student guilty of plagiarism. The student appealed this decision to the chancery court, pursuant to the Tennessee Uniform Administrative Procedures Act, which affirmed the finding of plagiarism. We affirm the decision of the chancery court.

In the spring of 1994, Plaintiff/Appellant Michael Sanderson ("Sanderson") was a senior undergraduate student at The University of Tennessee at Knoxville. He was enrolled in a class taught by Professor Robert Glenn. Professor Glenn distributed the class syllabus electronically at the beginning of the semester. The syllabus stated that a term paper would account for 30% of the course grade. The syllabus further provided:

> All assignments are to be the original work of the student presenting the work. Sources used in preparation are to be cited, and direct quotations are to be identified as such. Presentation of materials prepared by another person as your own work is cause for failure in the course.

The class discussed the subject of plagiarism during two separate class meetings, and Sanderson attended class on both of these occasions. One of the course textbooks assigned as reading for each class member defined plagiarism as follows:

> Plagiarism means using an author's words or ideas without giving credit. Credit for ideas usually is in the form of citing the author and year of publication in the text and reference list. Credit for actual words goes beyond this to giving the page number in the text and using quotation marks around the quoted material.

The course syllabus provided that the first draft of the term paper was due on April 20, 1994. It did not state that the first draft would be graded, but stated that the draft counted for 15% of the final grade. Sanderson submitted his first draft by E-mail to Professor Glenn and received an initial grade of 84, one of the three highest grades in the class. After Glenn's review, Sanderson decided to enter his paper in the university-sponsored McClung Research Paper Contest. Sanderson was ill the day the contest entries were due, and his girlfriend took his computer disk to the speech department and entered the paper in the contest for him.

One of the faculty members who reviewed the contest entries contacted Glenn and told him that some of the material in Sanderson's paper was not original. Glenn then compared Sanderson's first draft and the paper entered in the contest with the original sources. He concluded that much of the first half of Sanderson's paper had come from *Persuasion: Theory and Research*, a book written

by Daniel J. O'Keefe. This book was a textbook in another speech class that Sanderson had taken previously. After the comparisons, Glenn sent Sanderson an E-mail message asking to meet with him to discuss his term paper.

On May 4, 1994, Glenn met with Sanderson in the presence of Dr. Faye Julian, the head of the speech department. Glenn told Sanderson that he believed portions of the term paper had been plagiarized. Sanderson denied the charge and claimed that he had not cited meticulously in his first draft because he believed such exhaustive citation was not required in a rough draft. He divulged that he used an unpublished master's thesis as a source but that he failed to cite that source anywhere in the paper. All of the other sources were cited somewhere in the body of the paper and in the bibliography. Sanderson also claimed that his girlfriend had mistakenly taken the wrong computer disk to submit his paper in the contest. He then produced a third version of the paper, printed from a different disk, which he claimed was supposed to have been submitted in the contest.

Following the meeting, Glenn compared Sanderson's first draft, the contest paper, and the paper that Sanderson gave him at the May 4th meeting with a number of the source documents. After comparing all three versions to the sources, Glenn concluded that Sanderson had committed plagiarism. Glenn notified Sanderson that he would receive an "F" in Speech 499. Glenn then forwarded the matter to the University administration for disciplinary action, and the University formally charged Sanderson with plagiarizing in the first draft of his term paper.

A hearing on the charge of plagiarism was held before an Administrative Law Judge ("ALJ"). Noting that the University did not have an established definition of plagiarism, the ALJ used the definition in *Black's Law Dictionary*: "The act of appropriating the literary composition of another, or parts of passages of his writings, or the ideas or language of the same, and passing them off as the product of one's own mind." *Black's Law Dictionary* 1308 (4th ed. 1968). Based on this definition and the testimony of Sanderson and his girlfriend, the ALJ found that Sanderson did not intend to commit plagiarism and therefore was not guilty of the charge.

Pursuant to Tennessee Code Annotated § 4-5-315, the University appealed the ALJ's initial order to the University Chancellor, William Snyder. Chancellor Snyder did not hold a hearing, but reviewed the record. Chancellor Snyder compared all three drafts of Sanderson's paper to the original source materials and, citing the definitions of plagiarism utilized in the class, concluded that Sanderson was guilty of plagiarism. He issued a final order, reversing the ALJ's decision, affirming

2

the penalty of a final grade of "F" for the course and suspending Sanderson for one year. Sanderson then appealed Chancellor Snyder's final order to the chancery court under Tennessee Code Annotated § 4-5-322.

The chancery court reviewed the entire record, including Exhibit 15 to the hearing before the ALJ, in which all three versions of Sanderson's paper were directly compared to the source materials, both cited and uncited. After doing so, the chancery court found as follows:

> A review of the record shows that there is ample evidence that petitioner did plagiarize. This is especially evident from an examination of exhibit 15 to the hearing transcript, a comparison of the petitioner's three versions of his paper and his original sources. There are numerous examples in which the petitioner took verbatim from a source and did not enclose the quotation within quotation marks or cite the source and page. There are numerous examples where he took an idea from a source and failed to credit the source. There are also numerous places where the petitioner paraphrased the source by simply changing a word or two of a sentence, yet he did not cite his source. Finally, the petitioner used a great deal of material from a master's thesis by John Hutchinson, but nowhere cites the source. These all support Chancellor Snyder's finding of plagiarism.

The chancery court found that there was substantial and material evidence to support the University's final order, and therefore affirmed the determination of the plagiarism. Sanderson now appeals the chancery court's decision.

On appeal, Sanderson contends that the University's final decision was not supported by substantial and material evidence because Chancellor Snyder failed to take the ALJ's determinations of credibility into account. Sanderson claims that plagiarism requires intent and notes that only the ALJ had the opportunity to observe the witnesses and assess credibility. Because the ALJ found credible Sanderson's testimony that he did not intend to commit plagiarism, Sanderson argues that Chancellor Snyder's final order finding him guilty of plagiarism is not supported by substantial and material evidence.

The University argues that Chancellor Snyder was not required to take the ALJ's findings of fact into account when he reviewed the initial order. The University maintains that the chancery court correctly limited itself to reviewing only the final agency decision that was issued by Chancellor Snyder, rather than the initial decision rendered by the ALJ. It also contends that there was substantial and material evidence to support the University's final decision.

Judicial review of the final decision of an administrative agency is governed by the Tennessee Uniform Administrative Procedures Act, Tennessee Code Annotated §§ 4-5-101 to 4-5-325 (1991 & Supp. 1996). The chancery court may reverse or modify the decision if the rights of the petitioner

3

have been prejudiced because the administrative findings, inferences, conclusions, or decisions are unsupported by "substantial and material evidence in light of the entire record." *Id.* § 4-5-322(h)(5). This Court reviews a final agency decision under the same standard. *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667-68 (Tenn. 1977). Although not defined by statute, courts have held that substantial and material evidence requires "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. App. 1988) (citations omitted). Under this narrow standard, this Court does not review the fact issues on a *de novo* basis and cannot displace the agency's judgment as to the weight of the evidence even when there is evidence that could lead to a different decision. *Id.* at 279 (citations omitted).

This case involves appellate review of an administrative agency's final decision. Under the Tennessee Uniform Administrative Procedures Act, an initial order becomes a final order only when the initial order is not appealed in accordance with § 4-5-315 of the Tennessee Code Annotated. Tenn. Code Ann. § 4-5-314(b) (1991 & Supp. 1996). The standard governing an agency's review of an initial order entered by an administrative officer or hearing officer is set forth in § 4-5-315(d):

> The person reviewing an initial order shall exercise all the decision-making power that the agency would have had to render a final order had the agency presided over the hearing, except to the extent that the issues subject to review are limited by rule or statute or by the agency upon notice to all parties.

*Id.* § 4-5-315(d). Likewise, the University's rules provide the following standard for review of an initial order:

> The Chancellor, in reviewing an initial order, shall exercise all the decision making power that he would have had he presided over the hearing himself, except to the extent that the issues subject to review are limited by law or rule of the University or by the Chancellor upon notice to all parties.

Tenn. Admin. Reg. 1720-1-.01(13)(d) (October 1996).

Sanderson argues that the ALJ, as the trier of fact, is to be afforded great deference as to his determinations of the credibility of witnesses and the weight to be given their testimony. In support of this argument, Sanderson cites *Lettner v. Plummer*, 559 S.W.2d 785 (Tenn. 1977). In *Lettner*, alleged drug dealers challenged the police's seizure of large amounts of cash from their home. *Id.* at 786. An administrative hearing officer held that the cash was subject to forfeiture under the drug control laws. *Id.* The chancery court affirmed this decision. *Id.* On appeal, the Tennessee Supreme Court noted that the credibility of witnesses "is primarily a matter for determination by the

hearing officer." *Id.* at 787. Because there was ample evidence to support the administrative agency's decision, the Court affirmed. *Id.* Sanderson also cites *Landers v. Fireman's Fund Insurance Co.*, 775 S.W.2d 355 (Tenn. 1989), in which the Tennessee Supreme Court reiterated the general principle that deference should be given to a trial judge's determinations as to the credibility of witnesses. *Id.* at 356 (citing *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987)).

The University argues that Chancellor Snyder was not required to defer to the determinations of credibility of the ALJ in this case because Chancellor Snyder had the authority to conduct a *de novo* review of the initial order. *See* Tenn. Code Ann. § 4-5-315(d) (1991); Tenn. Admin. Reg. 1720-1-.01(13)(d) (October 1996). *See also Patterson v. Hunt*, 682 S.W.2d 508, 515 (Tenn. App. 1984) (noting that a university chancellor had *de novo* review in issuing a final decision) (citations omitted).

The University relies on *United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980), in which the United States Supreme Court considered whether due process requires a decision maker to personally observe witnesses testify. *Id.* *Raddatz* involved a district court's review of a magistrate's proposed findings. However, the Court analogized those facts to administrative agency cases and noted that the person or entity making the final agency decision may, but is not required to, defer to a hearing officer's findings. *Id.* at 680, 100 S. Ct. at 2414-15. The Court concluded that due process does not require the decision maker to observe the witnesses testify and that there is "broad discretion to accept, reject, or modify the [fact finder's] findings." *Id.* at 680, 100 S. Ct. at 2415.

In addition, the University cites *Gilbert v. University of Tennessee*, No. 3 (Tenn. App. Jan. 31, 1983), *perm. to appeal denied* (Tenn. April 4, 1983), *cert. denied*, 471 U.S. 1050, 105 S. Ct. 2108, 85 L. Ed. 2d 474 (1985). In *Gilbert*, the University appealed the initial order of a hearing examiner finding the accused innocent of a disciplinary charge. *Id.* at 1-2. The university chancellor entered a final order reversing the findings of the hearing examiner and finding the accused guilty as charged. *Id.* at 2. On appeal, **Gilbert** challenged the constitutionality of the university's rule permitting the chancellor to substitute his decision for that of the hearing examiner's. *Id.* at 3. The Court stated that "the law on this topic is crystal clear that administrative agencies are not bound to accept the findings and recommendations of hearing examiners." *Id.* at 5. Following *Raddatz*, the

Court held that due process does not require the decision maker to observe the witnesses testify. ***Id.*** at 5-6.

In ***Lettner***, cited by Sanderson, the decision of the administrative hearing officer was the agency's final decision, and the chancellor reviewed it under the standard set forth in Tennessee Code Annotated § 4-5-322(h)(5). ***Lettner***, 559 S.W.2d at 786. In this case, however, the ALJ's decision was only an <u>initial</u> order, and was appealed to the University Chancellor. Chancellor Snyder reviewed the matter under the correct standard, exercising the same "decision making power that he would have had had he presided over the hearing himself." Tenn. Admin. Reg. 1720-1-.01 (13)(d) (October 1996). ***See also*** Tenn. Code Ann. § 4-5-315(d). Chancellor Snyder appropriately utilized the definition of plagiarism given to the class by Professor Glenn, that is, "using an author's words or ideas without giving credit," instead of the definition of plagiarism utilized by the ALJ, which required an intent to pass off the works of another as one's own. After reviewing the entire record, including a comparison of all three versions of Sanderson's paper with the source materials, Chancellor Snyder issued the agency's <u>final</u> order, finding Sanderson guilty of plagiarism and affirming the penalty. As noted in ***Raddatz***, ***supra*** and ***Gilbert***, ***supra***, Chancellor Snyder was not required to observe the witnesses and was not bound by the determination of the ALJ.

Therefore, Chancellor Snyder's order was the final order, subject to review by the chancery court, and this Court, by the standard set forth in Tennessee Code Annotated § 4-5-322(h)(5), that is, a determination of whether Chancellor Snyder's final order was supported by "substantial and material evidence in light of the entire record." Tenn. Code Annotated § 4-5-322(h)(5) (1991).

After reviewing the record, the chancery court concluded that there was "ample evidence" that Sanderson plagiarized. We agree. After reviewing the entire record, and comparing all three versions of Sanderson's paper to the source materials, regardless of whether intent is required, there is clearly "substantial and material evidence" to support Chancellor Snyder's finding of plagiarism. Therefore, we affirm the decision of the chancery court.

The decision of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**