# IN THE SUPREME COURT OF TENNESSEE
# SPECIAL WORKERS' COMPENSATION APPEALS PANEL
# AT NASHVILLE
### November 25, 2013 Session

## LARRY O. EVANS v. FIDELITY & GUARANTY INSURANCE COMPANY
### ET AL.

### Appeal from the Chancery Court for Coffee County
### No. 2012CV126    L. Craig Johnson, Judge



### No. M2013-00763-WC-R3-WC - Mailed March 12, 2014
### Filed April 16, 2014

An employee sustained a compensable injury. The trial court ruled that the employee's partial disability award should be apportioned to the arm. The employee has appealed, asserting that the award should have been apportioned to his thumb. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law in accordance with Tennessee Supreme Court Rule 51. We affirm the judgment.

### Tenn. Code Ann. § 50-6-225(e) (2008 & Supp. 2012) Appeal as of Right; Judgment of the Chancery Court Affirmed

PAUL G. SUMMERS, SR. J., delivered the opinion of the Court, in which SHARON G. LEE, J. and DONALD P. HARRIS, SP. J., joined.

Barry H. Medley, McMinnville, Tennessee, for the appellant, Larry O. Evans.

Timothy Pirtle, McMinnville, Tennessee, for the appellees, Fidelity & Guaranty Insurance Company and Batesville Logistics, Inc.

## OPINION

### Factual and Procedural Background

Larry Evans ("Employee") worked at Batesville Casket Company ("Employer") from 1977 through the date of the trial of this matter. It is not disputed that Employee sustained a compensable injury involving his right thumb. The parties were unable to resolve their

differences at a Benefit Review Conference, and this action was filed in the Chancery Court for Coffee County on April 2, 2012.

At trial, Employee testified that he was sixty-five years old, had completed the tenth grade, and had no additional education or specialized training. He began having problems with his arms and hands in 2005. His problems worsened in March 2009, and he was referred to Dr. David Martin, a plastic surgeon specializing in the treatment of hand problems. Dr. Martin first saw Employee on May 28, 2009. His initial diagnosis was bilateral carpal tunnel syndrome. Dr. Martin noted some signs of basal joint arthritis[1] at that time. However, his primary concern was treatment of the carpal tunnel syndrome, and he performed carpal tunnel release surgery on both of Employee's arms in June and August of 2009. A settlement of Employee's workers' compensation claim for that condition was approved by the trial court on July 16, 2010.

Employee began noticing problems with his right thumb shortly after his carpal tunnel surgeries. When his right thumb condition worsened, he reported it to Employer and was referred to Dr. Martin for further evaluation. Dr. Martin's diagnosis was "advanced triggering of the right thumb" and described triggering as follows:

> Triggering, trigger thumb, or trigger finger, develops due to irritation where that tendon passes under a band of tissue, a tight band of tissue. And although it normally acts as a pulley, in some instances the movement of the tendon rubs on and irritates this small band or a belt over the tendon. When that happens, patients get triggering, which is the snapping and popping of the finger, when the finger moves, but they can also get swelling of that band or even a small fluid filled cyst or sack that is a response to the inflammation. Sometimes that nodule or cyst is the primary thing the patient is concerned about. So they will have identified a tender lump or bump where that tendon is passing under the pulley and have fewer symptoms of actual triggering.

Dr. Martin performed a local steroid injection on the thumb, but this provided only temporary relief. He, therefore, recommended a surgical procedure to release the thumb. That surgery was performed on July 6, 2010. Employee's recovery was slower than

---

[1] Dr. Martin described basal joint arthritis as "the deterioration, or wearing down of the cartilage between the metacarpal, or bone in the hand, with one of the wrist bones called the trapezium. This occurs at the bottom of the thumb near the wrist. It causes pain with grasping activities."

anticipated. By November 4, 2010, he was unable to fully flex or bend the thumb. Dr. Martin believed that this was caused by the formation of scar tissue at the surgical site. On November 12, 2010, Dr. Martin performed a tenolysis, a surgical procedure to free the tendon from the scar tissue.

The incision of the second surgery was slow to heal. By January 13, 2011, the incision had fully healed. Employee, however, still "could not achieve forceful flexion or motion of the thumb itself and had difficulty in extending the thumb fully[.]" Employee was permitted to return to work on a gradual basis. He continued to have difficulty moving his thumb. Dr. Martin concluded that additional scar tissue had developed at the site of the two surgeries. He recommended that Employee seek a second opinion concerning future treatment. Employee saw Dr. Kyle Joyner, an orthopaedic surgeon in Murfreesboro, who discussed several possible additional procedures with Employee and Dr. Martin. Employee eventually decided against any additional surgeries. Dr. Martin considered this to be a reasonable decision.

Dr. Martin found Employee to be at maximum medical improvement on April 28, 2011. He assigned a permanent impairment rating of 18% of the right thumb. That rating is equivalent to 8% to the hand, 7% to the arm or 4% to the body as a whole. The impairment rating was based upon diminished range of motion in two joints of the thumb. He placed no formal restrictions on Employee's activities. He acknowledged that Employee's condition would cause him to have pain with grasping activities.

During direct examination by Employee's counsel, Dr. Martin stated, "It is an injury confined to the right thumb, though it does have impact on the overall use of his hand without a doubt." During cross-examination, he stated that Employee had swelling and tenderness at the basal joint of the wrist, which is the point where the thumb joins the wrist. Dr. Martin further testified that the "friction point" for the triggering of Employee's right thumb was "directly at the point where the thumb attaches to the rest of the hand or in the crease -- right below the crease where the thumb attaches to the hand." During redirect examination, he agreed that the injury "may affect other body parts, but . . . is in fact limited to the right thumb."

Employee testified that he continued to work in the same job he had held since 2001 and was able to perform all aspects of the job. He was able to grip objects with his right hand using his fingers only. He could not use his thumb to hold a pencil or screwdriver. He expressed the opinion that he had lost all use of his right thumb.

The trial court took the matter under advisement and issued a written decision on January 24, 2013. The trial court found that Employee's injury should be apportioned to the arm. In accordance with Tennessee Code Annotated section 50-6-241(d)(1)(A), the award

of permanent partial disability benefits was, therefore, limited to one and one-half times the anatomical impairment. The court awarded 10.5% permanent partial disability to the right arm. Judgment was entered in accordance with those findings, and Employee has appealed.

**Analysis**

Employee contends that the evidence preponderates against the trial court's finding that his injury should be assigned to the arm, and thus subject to the one and one-half times impairment "cap," rather than to the thumb, which is not subject to the cap. At the outset, we note that our standard of review of issues of fact is *de novo* upon the record of the trial court accompanied by a presumption of correctness of the findings, unless the preponderance of evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2008 & Supp. 2012). When credibility and weight to be given testimony are involved, considerable deference is given to the trial court when the trial judge had the opportunity to observe the witness's demeanor and hear in-court testimony. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987). A reviewing court, however, may draw its own conclusions about the weight and credibility to be given to expert testimony when all of the medical proof is by deposition. Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997); *Landers v. Fireman's Fund Ins. Co.*, 775 S.W.2d 355, 356 (Tenn. 1989). A trial court's conclusions of law are reviewed *de novo* upon the record with no presumption of correctness. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996).

Employee relies largely upon Dr. Martin's statement that his injury was "confined to the thumb" in support of his position in this appeal. He concedes that the injury affects the function of the hand as a whole. However, he notes that the Tennessee Supreme Court has held that an award for an injury to a particular scheduled member should be limited to that member absent "some unusual and extraordinary condition affecting some other member . . . as a result of the injury to the scheduled member." *Jeffrey Mfg. Co. of Tenn. v. Underwood*, 426 S.W.2d 189, 191 (Tenn. 1968) (citing *Ottens v. Western Contracting Co.*, 296 N.W. 431 (Neb. 1941); *see also*, *Adams Const. Co. v. Cantrell*, 263 S.W.2d 516, 517 (Tenn. 1953); *Sharp v. Protective Apparel Corp.*, No. 03S01-9301-CV-00004, 1994 WL 901489 (Tenn. Workers' Comp. Panel Feb. 8, 1994).

Dr. Martin testified that the injury had "an impact on the overall use of [Employee's] hand," and, more importantly, that the site of the anatomical flaw that caused the problem was "directly at the point where the thumb attaches to the rest of the hand or in the crease -- right below the crease where the thumb attaches to the hand." The trial court relied on that testimony in reaching its decision.

This Panel has recently addressed the issue of choosing between scheduled members for apportionment of permanent partial disability in *Schering Plough Healthcare Prod., Inc.*

*v. Plumley*, No. E2009-01130-WC-R3-WC, 2010 Tenn. LEXIS 884 (Tenn. Workers' Comp. Panel Sept. 22, 2010). In that case the issue presented was whether the employee's injury should be apportioned to his foot or to his leg. We noted:

> Our Supreme Court has acknowledged the difficulty in determining to which scheduled member an injury should be attributed when there is a close connection between two scheduled members. Usually the injury will be attributed to "the greater." *Onley v. Nat'l Union Fire Ins. Co.*, 785 S.W.2d 348, 350 (Tenn. 1990) (citing *Camis v. Indus. Comm'n*, 4 Ariz. App. 312, 420 P.2d 35 (Ariz. Ct. App. 1966)).
>
> In a case prior to *Onley*, the Court was faced with a dispute as to whether an injury was to the body as a whole, to the leg, or to the foot. While the Court concentrated on the issue related to the body as a whole, it did make an observation as to what principle should govern the issue as between the leg and foot (both scheduled members). "Nonetheless, there is no question that he has a substantial permanent partial disability to the right foot and the right leg. Since the scheduled injury for impairment of a leg exceeds that for impairment of the foot, the schedule for the greater impairment is applicable." *Reagan v. Tenn. Mun. League*, 751 S.W.2d 842, 843 (Tenn. 1988) (citations omitted).
>
> Thomas Reynolds, in his treatise on Tennessee workers' compensation law, observes that when determining the priority of an award between scheduled members, it should go to "the paramount member." See Reynolds, 20 *Tennessee Practice Tennessee Workers' Compensation Practice and Procedure with Forms* § 14:6 (6th ed. 2005). He then observes that "if the paramount member is not affected, the award must be based on the lesser member." *Id*. § 14:6 n.12. The treatise contains this comment: "When the employee injured his right foot and his right leg, the maximum award is for the loss of or partial loss of use of the paramount member, the leg." *Id*. § 14:6 (citing *Reagan*, 751 S.W.2d at 842). As Reynolds points out, this is merely the application of the concurrent injury rule to connected scheduled members. *Id*.

2010 Tenn. LEXIS 881 at *7-*9.

Dr. Martin, the only physician to testify in this case, stated that the site of the tendon irritation that caused Employee's trigger thumb was located at the point where his thumb joined his wrist. For purposes of the workers' compensation law, the wrist is considered to be part of the arm. *See, e.g., Tacle Seating USA, LLC v. Vaughn*, No. M2009-02418-WC-R3-WC, 2010 WL 4103694 (Tenn. Workers' Comp. Panel Oct. 19, 2010). Following the rule set out by the Tennessee Supreme Court in *Onley*, and restated by this Panel in *Plumley*, we conclude that the trial court correctly chose to apportion Employee's injury to the arm.

## Conclusion

The judgment of the trial court is affirmed. Costs are taxed to Larry Evans and his surety, for which execution may issue if necessary.

_____
PAUL G. SUMMERS, SENIOR JUDGE

# IN THE SUPREME COURT OF TENNESSEE
# SPECIAL WORKERS' COMPENSATION APPEALS PANEL
# AT NASHVILLE

## LARRY O. EVANS v. FIDELITY & GUARANTY INSURANCE COMPANY ET AL.

**Chancery Court for Coffee County**
**No. 2012CV126**

_____

**No. M2013-00763-WC-R3-WC - Filed April 16, 2014**

_____

### JUDGMENT

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs will be paid by Larry Evans and his surety, for which execution may issue if necessary.


PER CURIAM